UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BEST SUPPLEMENT GUIDE, LLC; SEAN COVELL, an individual,<br><br>    Plaintiffs,<br><br>    v.<br><br>GAVIN NEWSOM, et al.,<br><br>    Defendants. | No.  2:20-cv-00965-JAM-CKD<br><br>**ORDER DENYING PLAINTIFFS' EX PARTE APPLICATION AND MOTION FOR EMERGENCY TEMPORARY RESTRAINING ORDER AND FOR ORDER TO SHOW CAUSE WHY PRELIMINARY INJUNCTION SHOULD NOT ISSUE.** |

Best Supplement Guide LLC is a California limited liability corporation that conducts business under the trade name "Fitness System." Compl. ¶ 17, ECF No. 1. Fitness System operates three membership-based gyms, including one in Lodi, California. Compl. ¶ 50. Sean Covell organized and registered Fitness System within the State of California. Compl. ¶ 20. He is the director, manager, and president of the corporation. Id. In March 2020, Governor Newsom and San Joaquin County enacted "stay at home" orders to help counteract the rapid spread of COVID-19. Compl. ¶¶ 68-74. The State and County Orders required Plaintiffs to close Fitness System's Lodi facility against their wishes.

1

Compl. ¶ 95. The gym remains closed.

In response, Plaintiffs brought this civil rights action against various state and local officials, challenging the validity and enforcement of both stay at home orders. Shortly thereafter, Plaintiffs filed an ex parte application to temporarily enjoin enforcement of the State and County Orders.[1] Mot. for TRO ("TRO"), ECF No. 3. The State and Local Defendants oppose the motion. See State Defs.' Opp'n to Plfs.' Ex parte App. ("State Opp'n"), ECF No. 9; County and City Defs.' Opp'n to Plfs.' Ex parte App. ("Local Opp'n"), ECF No. 10. For the reasons discussed below, the Court denies Plaintiffs' request for a temporary restraining order and for an order to show cause why a preliminary injunction should not issue.

I.  BACKGROUND

In December 2019, a novel coronavirus known as COVID-19 began spreading across the globe. Compl. ¶ 61. The virus quickly traveled from one country to the next, and by late January 2020, the United States Secretary of Health and Human Services declared a public health emergency. Compl. ¶¶ 61-62. COVID-19 eventually reached California and began infecting people within its communities. Compl. ¶¶ 63-65. In an effort to prevent widespread infection, Governor Newsom declared a state of emergency and issued Executive Order N-33-20. Compl. ¶¶ 63, 68. The order directed California residents to "stay home or at their

---

[1] The Court determined Plaintiffs' ex parte application was suitable for decision without oral argument. E.D. Cal. L.R. 230(g).

2

place of residence except as needed to maintain continuity of operations of the federal critical infrastructure services." Compl. ¶ 69; see also Ex. G to TRO, ECF No. 3-1.  Governor Newsom reserved authority to "designate additional sectors as critical [to] protect the health and well-being of all Californians."  Ex. G to TRO.

On March 20, San Joaquin County followed suit. Compl. ¶ 74. It issued a stay at home order directing "all individuals living in the County to stay . . . at their place of residence except . . . to provide or receive certain essential services or engage in certain activities." Ex. J to TRO, ECF No. 3-1. The County Order's intent was to help implement the State stay at home order and slow the spread of COVID-19.  Id.

As COVID-19 continued to spread, Governor Newsom and County officials issued amendments containing increasingly stringent restrictions. Compl. ¶¶ 76-85.  Specifically, an April 14 amendment to the County's stay at home order required all gyms to close.  Compl. ¶ 85.  In the April 14 amendment, the County again maintained it was implementing the State Order.  Compl. ¶ 80.

In late April, Plaintiffs announced they would reopen Fitness System's Lodi facility notwithstanding the County Order. Compl. ¶ 100.  San Joaquin County and the City of Lodi learned of Plaintiffs' plans to reopen.  Compl. ¶¶ 102-103.  On April 30, three Lodi Police Officers arrived at the Lodi gym with a letter from County Counsel.  Compl. ¶¶ 103-104, 111.  The officers informed Covell that reopening the gym would result in civil, administrative, and criminal penalties.  Compl. ¶¶ 106-110.

///

II.  OPINION

A.  Judicial Notice

District courts may take judicial notice of "a fact that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). Consequently, a court may take judicial notice "of court filings and other matters of public record," Reyn's Pasta Bella, LLC v. Visa USA, Inc., 442 F.3d 741, 746 n.6 (9th Cir. 2006), including "government documents available from reliable sources on the internet," California River Watch v. City of Vacaville, No. 2:17-cv-00524-KJM-KJN, 2017 WL 3840265, at *2 n.1 (E.D. Cal. Sept. 1, 2017).

Plaintiffs and the Local Defendants request the Court take judicial notice of various documents issued by the federal government, the State of California, San Joaquin County, and the City of Lodi.  See TRO at 11-13; Local Defs.' RJN, ECF No. 11. Moreover, the State Defendants request the Court judicially notice "a series of order[s] and directives of the Governor and Public Health Officer" that make up the State's stay at home order.  State Defs.' RJN, ECF No 9-3. Finding these government documents to be proper subjects of judicial notice, the Court grants the parties' requests.

B.  Legal Standard

Parties seeking a temporary restraining order must establish (1) they are likely to succeed on the merits; (2) they are likely to suffer irreparable harm absent preliminary relief;

4

(3) the balance of equities tips in their favor, and (4) an injunction is in the public interest. Winter v. Nat. Res. Def. Council, Inc., 555 U.S. 7, 20 (2008); see also Stuhlbarg Intern Sales Co., Inc. v. John D. Brush and Co., Inc., 240 F.3d 832, 839 n.7 (9th Cir. 2001). In the Ninth Circuit, courts may also issue temporary restraining orders when there are "serious questions going to the merits" and a "balance of hardships that tips sharply towards the plaintiff" so long as the remaining two Winter factors are present. Alliance for Wild Rockies v. Cottrell, 632 F.3d 1127, 1135 (9th Cir. 2011). When applying either test, courts operate with the understanding that a temporary restraining order, much like a preliminary injunction, is an "extraordinary and drastic remedy." Cf. Munaf v. Geren, 553 U.S. 674, 690 (2008). "The propriety of a temporary restraining order, in particular, hinges on a significant threat of irreparable injury [] that must be imminent in nature." Gish, No. EDCV 20-755-JGB(KKx), 2020 WL 1979970, at *3 (April 23, 2020) (citing Simula, Inc. v. Autoliv, Inc., 175 F.3d. 716, 725 (9th Cir. 1999); Caribbean Marine Serv. Co. v. Baldridge, 844 F.2d 668, 674 (9th Cir. 1988)).

    C.    Analysis

    Arguing they satisfy each of the four Winter factors, Plaintiffs request the Court temporarily enjoin enforcement of the State and County orders so Fitness System may reopen its Lodi facility. TRO at 13-27. But the Court finds Plaintiffs have not shown they are likely to succeed on the merits of any of the claims discussed in their motion. Nor have they raised serious questions going to the merits of these claims.

1 Emergency relief is therefore improper.

2                 1. <u>Likelihood of Success on the Merits</u> / <u>Serious</u>
3                     <u>Questions going to the Merits</u>

4    This Court, alongside many others, has adopted the standard
5 set forth in <u>Jacobson v. Commonwealth of Massachusetts</u>, 197 U.S.
6 11, 31 (1905) to assess the constitutionality of a state or
7 local official's exercise of emergency police powers.  <u>See</u>
8 <u>Givens v. Newsom</u>, No. 2:20-cv-00852-JAM-CKD, 2020 WL 2307224, at
9 *3 (E.D. Cal. May 8, 2020); <u>Cross Culture Christian Center. v.</u>
10 <u>Newsom</u>, -- F. Supp. 3d --, No. 2:20-cv-00832-JAM-CKD, 2020 WL
11 2121111, at *4 (E.D. Cal. May 5, 2020); <u>see also</u> <u>Calvary Chapel</u>
12 <u>of Bangor v. Mills</u>, --F. Supp. 3d --, No. 1:20-cv-00156-NT, 2020
13 WL 2310913, at *7 (D. ME May 9, 2020); <u>SH3 Health Consulting,</u>
14 <u>LLC v. Page</u>, No. 4:20-cv-605-SRC, 2020 WL 2308444, at *6 (E.D.
15 Mo. May 8, 2020); <u>Gish v. Newsom</u>, No. 5:20-cv-00755-JGB(KKx),
16 2020 WL 1979970, at *5 (C.D. Cal. April 23, 2020).  Accordingly,
17 this court must uphold the gym closures required by the State
18 and County stay at home orders unless (1) there is no real or
19 substantial relation to public health, or (2) the measure is
20 "beyond all question" a "plain [and] palpable" invasion of
21 rights secured by the fundamental law.  <u>Cross Culture Christian</u>
22 <u>Ctr.</u>, 2020 WL 2121111, at *5 (quoting <u>Jacobson</u>, 197 U.S. at 30).

23                 a.   Real and Substantial Relation to Public
24                     Health

25    The Court first finds that the State and County gym
26 closures bear a real and substantial relation to public health.
27 In reaching this conclusion, the Court disagrees with
28 Plaintiffs' contention that the State and County orders are

simply too far reaching to bear a substantial relation to public health.  See Reply at 10-12, ECF No. 16.  COVID-19 is extremely infectious.  State Opp'n at 10.  It can "easily spread through droplets generated when an infected person coughs or sneezes, or through droplets of saliva or discharge from the nose."  Park Decl. ¶ 6, ECF No. 10-1.  "These droplets can [] live on skin as well as objects," allowing the virus to spread "when there is contact between people" or "when a person touches contaminated objects."  Id.  This undisputed information about COVID-19 and its transmission logically explains why State and County officials found that temporary gym closures were, and continue to be, a critical step in slowing the virus's spread.  Workout facilities often contain high density groups, congregating and exercising in closed areas at the same time, breathing heavily, and sharing gym equipment.  Park Decl. ¶ 21.  "And unlike grocery stores . . . many gym members return to [their gyms] multiple times per week as part of a fitness routine."  Id.

   Plaintiffs' reply brief highlights the "miniscule" COVID-19 infection, hospitalization, and death rates in California and San Joaquin County.  Reply at 2-4.  Presumably, these statistics are designed to showcase a disproportionality between the drastic economic impact of the State and County orders and the danger COVID-19 poses.  To the extent that this was Plaintiffs' objective, their data points—stripped of any context—fall short of reaching their goal.  Plaintiffs wholly fail to grapple with the possibility that the health of their neighbors is a symptom of the stay at home orders, rather than evidence that the restrictions aren't needed.

Just like the current restrictions on in-person church services and in-person protests, the gym closures required by the State and County orders plainly bear a real and substantial relation to public health. See Givens, 2020 WL 2307224, at *4; Cross Culture Christian Ctr., 2020 WL 2121111, at *4.

### b. Plain and Palpable Invasion of Fundamental Law

The State and County orders are also not "beyond all question" a plain and palpable invasion of Plaintiffs' fundamental rights. Although courts have not yet defined the precise contours of this standard, it plainly puts a thumb on the scale in favor of upholding state and local officials' emergency public health responses. Viewing the State and County orders through this lens, the Court finds the State and County gym closures do not exceed the scope of remedial action Jacobson, 197 U.S. at 30 allows.

### i. Freedom of Speech, Assembly, and Expressive Association[2]

The First Amendment protects individuals from undue interference with their freedom of speech, assembly, and expressive association. U.S. CONST., amend. I; De Jonge v.

---

[2] In Plaintiffs' TRO, they argue the California Constitution, like the United State Constitution, protects the expressive right to speech, assembly, and association. TRO at 14 n.17 (citing Cal. Const. art. 1, § 3). Plaintiffs' complaint, does not, however, set forth a cause of action under Article 1, Section 3 of the California Constitution. The Court will not adjudicate Plaintiffs likelihood of success on a claim they have not alleged. This principle applies with the same force to Plaintiffs' assertion that the California Constitution protects a right to intrastate travel. See TRO at 18 n.19.

1  Oregon, 299 U.S. 353, 364 (1937).  Plaintiffs argue the State
2  and County gym closures unlawfully infringe upon each of these
3  freedoms.  TRO at 14-15.  The Court disagrees.
4      As a preliminary matter, Plaintiffs' motion fails to
5  explain how the State and County gym closures prohibit protected
6  speech.  The First Amendment's free speech clause only "affords
7  protection to symbolic or expressive conduct [and] actual
8  speech."  Virginia v. Black, 538 U.S. 343, 358 (2003).  As
9  Defendants argue, the State and County gym closures plainly
10 restrict non-expressive conduct: operating gyms.  The Court
11 lacks any authority for the proposition that operating a gym
12 implicates the First Amendment's free speech protections.  State
13 Opp'n at 12; Local Opp'n at 12; see also United State v.
14 O'Brien, 391 U.S. 367, 376 (1968) ("We cannot accept the view
15 that an apparently limitless variety of conduct can be labeled
16 'speech whenever the person engaging in the conduct intends
17 thereby to express an idea.").  Plaintiffs are therefore
18 unlikely to succeed on the merits of this claim.  They also fail
19 to raise serious questions going to the claim's merits.
20     Nor are Plaintiffs likely to succeed on the merits of the
21 freedom of assembly or freedom of association claims.  Today,
22 the freedom of association and freedom of assembly are largely
23 viewed as one.  See Roberts v. U.S. Jaycees, 468 U.S. 609, 618
24 (1984).  Parties may only bring an expressive-association claim
25 under the First Amendment if they demonstrate that they are
26 asserting their right to associate "for the purpose of engaging
27 in those activities protected by the First Amendment—speech,
28 assembly, petition for the redress of grievances, and the

1  exercise of religion." Id.  Plaintiffs contend that "[w]hen
2  Fitness System and Covell's staff and customers interact, they
3  engage in expressive association and the advancement of shared
4  beliefs." TRO at 14.  They do not, however, cite any cases to
5  support the idea that the freedom to associate is designed to
6  protect this type of non-expressive, commercial interaction.
7  Just like the freedom of speech, the rights conferred by the
8  freedoms of assembly and association do not guard against the
9  grievances Plaintiffs claim.

### ii. Right to Travel

It is well-established that the Fourteenth Amendment's Privileges or Immunities Clause enshrines a "constitutional right to travel from one State to another." Saenz v. Roe, 526 U.S. 489, 498 (1999).  This right "embraces at least three different components": (1) the right of a citizen of one state to enter and leave another state; (2) the right to be treated "as a welcome visitor" when temporarily present in another state; and (3) the right for travelers who elect to become residents to be treated like other residents of that state. Id. at 500.  But the Supreme Court has not defined or even recognized a constitutional right to intrastate travel.  The Ninth Circuit has been similarly silent on this issue. See Adams v. United States Dep't of Agric., No. CV 08-283-TUC-RCC, 2010 WL 11523866, at *7 (D. Ariz. Mar. 9, 2010) (citing Nunez ex rel. Nunez v. City of San Diego, 114 F.3d 946, 949 n.7 (9th Cir. 1994)).

Plaintiffs contend that although the Supreme Court has not yet recognized a constitutional right to intrastate travel, it

"certainly [is] not dismissive of the possibility" that such a right exists. Reply at 7. Plaintiffs' argument that their claim at least raises questions about the merits of an alleged right to intrastate travel claim misunderstands the burden Plaintiffs bear at this stage of the proceedings. To obtain the preliminary relief under the Jacobson framework, Plaintiffs must either show (1) they are likely to succeed on the merits of their claim that the State and County gym closures are beyond all question an invasion of their fundamental rights, or (2) there are serious question going to the merits of whether the State and County gym closures are beyond all question an invasion of their fundamental rights. This Court cannot find that the State and County orders violate "beyond all question" a right that is not yet known to exist. Plaintiffs are unlikely to succeed on this claim and have failed to raise serious questions going to its merits.

### iii. Due Process

The Due Process Clause contained in the Fourteenth Amendment contains both a procedural and substantive component. Washington v. Glucksberg, 521 U.S. 702, 720-21 (1997). "Procedural due process imposes constraints on governmental decisions which deprive individuals of 'liberty' or 'property interests within the meaning of the Due Process clause." Mathews v. Eldridge, 424 U.S. 319, 332 (1976). "A liberty interest may arise from the Constitution itself . . . or it may arise from an expectation or interest created by state laws or policies. Wilkinson v. Austin, 545 U.S. 209, 222 (2005) (citing Wolff v. McDonnell, 418 U.S. 539, 556-558 (1974)). Substantive

11

due process, on the other hand, "forbids the government from depriving a person of life, liberty, or property in such a way that . . . interferes with rights implicit in the concept of ordered liberty"—regardless of what type of process is first given. Engquist v. Oregon Dept. of Agric., 478 F.3d 985, 996 (9th Cir 2007).

Plaintiffs seem to argue that State and County officials should have afforded them some sort of legal process prior to enacting and threatening to enforce their stay at home orders. TRO at 19. Without citing any supporting authority, Plaintiffs contend the State and Local Defendants were under an obligation to conduct individualized public health investigations before enacting any measures designed to protect the public from COVID-19's spread. Id. Not so. Indeed, as the State argues, the Ninth Circuit has specifically rejected the notion that the Due Process Clause requires this type of pre-deprivation process before enacting and enforcing laws of general applicability. State Opp'n at 17-18 (citing Halverson v. Skagit County, 42 F.3d 1257, 1260 (9th Cir. 1994)). "[G]overnmental decisions which affect law areas and are not directed at one or a few individuals do not give rise to the constitutional procedural due process requirements of individual notice and hearing; general notice as provided by law is sufficient." Halverson, 42 F.3d at 1260. Plaintiffs do not allege the current gym closures are targeted at individual gym owners or particular facilities. Rather, the State and County orders prohibit the operation of all gyms and workout facilities within their respective jurisdictions. State Opp'n at 18 (citing Ex. G to TRO).

Plaintiffs' due process claims do not fare any better under the Due Process Clause's substantive component. As discussed above, Plaintiffs are unlikely to show that the State and County gym closures arbitrarily deprived them of their fundamental rights to travel, engage in expressive association, speak, or assemble. Plaintiffs' remaining theory of substantive due process liability is that the State and County orders unlawfully abridge Plaintiffs' right to pursue the occupation of their choice. TRO at 18-19. To be sure, "[i]t requires no argument to show that the right to work for a living in the common occupations of the community is of the very essence of the personal freedom and opportunity that it was the purpose of the [Fourteenth] Amendment to secure." Sagana v. Tenorio, 384 F.3d 731 (9th Cir. 2004) (quoting Truax v. Raich, 239 U.S. 33, 41 (1915)). Even so, neither the Supreme Court nor the Ninth Circuit "has []ever held that the right to pursue work is a fundamental right," entitled to heightened constitutional scrutiny. Id. at 743.

The judicial review that applies to laws infringing on nonfundamental rights is "a very narrow one." Id. The Court need only ask "whether the government could have had a legitimate reason for acting as it did." Id. (emphasis in original). The Court finds that the State and County orders, albeit burdensome, were enacted for a legitimate reason. As this Court has previously explained, COVID-19 is a highly infectious, and sometimes deadly, virus that is often spread by people who do not even know they have it. There's no cure or vaccine, and its long-term effects are still largely unknown.

But health experts do know this: limiting physical contact between people is the most effective way to stop COVID-19's spread. Park Decl. ¶¶ 6-8. Given these uncontroverted facts, elected officials at the state and county level enacted stay at home orders, codifying this best practice into law. The Court finds this to be a legitimate reason for temporarily restricting Plaintiffs' right to pursue the occupations of their choice.

### iv. Equal Protection

As both parties agree, the Equal Protection Clause prohibits the government from drawing "arbitrary distinctions between individuals based solely on differences that are irrelevant to a legitimate governmental objection." TRO at 20 (citing City of Cleburne, Tex. v. Cleburne Living Ctr., 473 U.S. 432, 446 (1985)); Local Opp'n at 15 (same). The parties, however, disagree about what degree of constitutional scrutiny applies to the State and Local orders. Equal protection claims only garner strict scrutiny when a law "disadvantages a suspect class or impinges upon a fundamental right." Maynard v. U.S. Dist. Court for the Cent. Dist. Of Calif., 701 F. Supp. 738, 742 (1988). As previously explained, the State and County orders do not impinge upon Plaintiffs fundamental rights. Nor do they discriminate on the basis of any suspect classification. As a result, the orders need only survive rational basis review. F.C.C. v. Beach Commc'ns, Inc., 508 U.S. 307, 313 (1993).

When a law regulates different classifications of conduct differently, rational basis review requires that there be "a plausible policy reason for the classification" and that "the relationship of the classification to its goal is not so

attenuated as to render the distinction arbitrary or irrational." Angelotti Chiropractic, Inc. v. Baker, 791 F.3d 1075, 1085 (9th Cir. 2015) (quoting Nordlinger v. Hahn, 505 U.S. 1, 11 (1992)).  Plaintiffs argue it is arbitrary to keep gyms closed when they are equally as capable of complying with the CDC's social distancing guidelines as businesses that have been allowed to reopen.  But State and County public health experts disagree with this premise.  Dr. Park's declaration, in particular, identifies several reasons why the challenges posed by reopening gyms differ, both in kind and in scale, from those that arise when reopening other businesses.  Park Decl. ¶¶ 20-26.  These reasons persuade the Court that State and County's continued gym closures bear a rational relationship to public health.

      c. Right to Liberty

  Finally, Plaintiffs contend that the State and County stay at home orders violate their right to liberty under Article I, Section 1 of the California Constitution.  As an initial matter, Plaintiffs' state constitutional claim against state officials in their official capacity is barred by the Eleventh Amendment. Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 106 (1984) (finding the Ex parte Young, 209 U.S. 123 (1908) and Edelman v. Jordan, 415 U.S. 651 (1974) exceptions to Eleventh Amendment immunity inapplicable in a suit against state officials on the basis of state law).  Plaintiffs can neither succeed nor proceed on this claim against the State.

  Plaintiffs argue they are nonetheless likely to succeed on their Article 1, Section 1 claim against the Local Defendants

because public health officials may not exercise their quarantine powers absent "reasonable grounds [] to support the belief that the person so held is infected." TRO at 22 (quoting Ex Parte Martin, 83 Cal. App. 2d 164, 167 (1948)). Plaintiffs also cite Jew Ho v. Williamson, 103 F.10 (C.C.D. Cal. 1900), where the California court found that sealing off an entire section of San Francisco to prevent the spread of the bubonic plague was "unreasonable, unjust, and oppressive." Id. at 26.

Both cases Plaintiffs rely upon are easily distinguishable and of little precedential value to this Court. Ex Parte Martin involved the quarantine of two individuals in jail after passing through a place of prostitution, and Jew Ho involved a racially-motivated and scientifically-unfounded quarantine of San Francisco's Chinatown. See Ex Parte Martin, 83 Cal. App. 2d at 166; Jew Ho, 103 F.10 at 23, 26. These cases are clearly inapposite. Requiring public health officials in the current pandemic to "identify specific individuals who carry the virus and order only them to stay home would not be feasible." State Opp'n at 22. That would require far more aggressive testing and contact-tracing, neither of which the State, at present, has the capacity to do. Id. It also ignores the fact that many people who are infected with COVID-19, and contributing to its spread, are completely asymptomatic. Id.

The Court is under no illusion that compliance with the State and County stay at home orders is easy or not causing economic hardships. The changes to daily life caused by the restrictions these orders impose range from uncomfortable to crippling, depending on each person's circumstances. But

16

neither the County order, generally, nor its gym closures, specifically, amount to "virtual imprisonment" such that it violates Plaintiffs' right to liberty under the cases Plaintiffs cite. See TRO at 22 (quoting Ex parte Arta, 52 Cal. App. 380, 383 (1921)). Plaintiffs are unlikely to succeed on this claim and do not raise serious questions going to its merits.

### 2. Remaining Factors

A district court may not grant a plaintiff's motion for a temporary restraining order if the request fails to show the plaintiff is likely to succeed on the merits of a claim or, at least, raises serious questions going to the merits of that claim. See Winter, 555 U.S. at 20; Alliance for Wild Rockies, 632 F.3d at 1135. Plaintiffs here did not make either showing. The Court need not consider the remaining factors in denying their request. Cross Culture Christian Ctr., 2020 WL 2121111, at *8.

### D.   Conclusion

The restrictions imposed by the State and County orders are exacting. But they are also temporary, rooted in science, and proportional to the threat COVID-19 poses. It bears repeating: these restrictions are temporary. Governor Newsom and County officials have made it clear gyms and other similarly-situated venues will reopen as soon as it is safe. Relying upon scientifically-backed opinions of their public health experts, these officials have concluded it is not safe to reopen yet. This conclusion reflects these elected officials' best efforts to balance the interests in promoting public health with those in ensuring economic stability.

For the third time in less than a month, this Court finds the State and County orders, as is and as currently applied, are a constitutional response to an unprecedented pandemic. Plaintiffs continued compliance with these orders are essential to the well being of the general public. The continued performance of this critical civic duty (i.e. remaining temporarily closed) will help prevent the spread of COVID-19 and save lives. For this, plaintiffs and all gym owners similarly situated are to be commended.

### III.  ORDER

For the reasons set forth above, the Court DENIES Plaintiffs' ex parte application for a temporary restraining order.  The Court also DENIES Plaintiffs' request for an order to show cause why a preliminary injunction should not issue. Plaintiffs failed to show a likelihood of success on their claims or raise serious questions going to the merits of those claims. Absent newly-discovered facts or a change in intervening caselaw, Plaintiff's failure to make this showing would likewise preclude the Court from granting a motion for preliminary injunction.

IT IS SO ORDERED.

Dated: May 22, 2020

JOHN A. MENDEZ,
UNITED STATES DISTRICT JUDGE